## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                  No. 2:11-CR-20790-1

    v.                              HON. BERNARD A. FRIEDMAN

TERRANCE MATTHEWS

        Defendant.

_____/

## DEFENDANT MATHEWS RESPONSE TO THE GOVERNMENTS' OPPOSITION & SUPPLEMENTAL AUTHORITY

NOW COMES Defendant Terrance Matthews, by and through counsel, Stephon Johnson and for his Response files the instant. Counsel asks that this Court consider this pleading and all attachments. Counsel herein additionally request, that this Court provide for oral argument and/or a hearing if the Court deems it so helpful. Counsel herein suggests that the facts are simply and specifically stated, however, the documents and facts provided to the Court in this pleading are totally opposite from the governments' unsupported pleadings.

### INTRODUCTION

Defendant Terrance Matthews (hereinafter referred to at times as "Matthews"), was charged with various Counts in the Indictment, in the instant case. Matthews was released on bond pretrial. Matthews was placed on home confinement, 24-hour electronic monitoring (the most restrictive condition

available) as a requirement of pre trial release from January 12, 2012 until July 31, 2013 (approximately one (1) year and seven (7) months).

Matthews pled guilty pursuant to a Rule 11 Plea Agreement to resolve all allegations in the Indictment. Matthews fully accepted responsibility for all of his actions. He pled guilty on or about November 20, 2012. Matthews was sentenced on July 31, 2013 to a term of 135 months imprisonment. The sentence was later reduced, after the drug guidelines were lowered to 120 months (the statutory mandatory minimum). Matthews was designated to serve his sentence of incarceration at FCI Elkton.

Defendant Matthews filed a Pro Se Motion for Compassionate Release (ECF No. 208) on May 20, 2020. On May 26, 2020 the government filed the United States' Response Opposing the Defendant's Motion for Compassionate Release (ECF No. 205). The government also filed the United States' Notice of Supplemental Authority (ECF No. 209) on June 4, 2020. On June 9, 2020 Counsel herein filed a second appearance in the instant matter (ECF No. 210).

## ARGUMENT

The government in their opposition to Defendant Matthews request for release argues the facts of the underlying investigation and indictment from many years ago (including 2009). The government's opposition pleading spends several (approximately 5) pages discussing underlying conduct of the conviction. Matthews pled guilty accepted responsibility for all of his conduct, was and still is remorseful. This Honorable Court considered the applicable guidelines and Matthews' background. All information considered, this Court sentenced Defendant Matthews as justice required.

The question at this stage is not whether he committed a crime or the facts of the crime. The issue at this stage is whether compassionate release is available to Defendant Matthews and whether under the current circumstances of COVID-19 and the deplorable conditions which have led to the death of several inmates at FCI Elkton, he should be released. The government's facts included in its opposition are NOT accurate and its reliance on its legal argument including the Supplemental Authority (ECF 209) is misplaced.

### I. *FCI ELKTON IS A FACILITY WITH AN EXTREMELY HIGH RATE OF INFECTION AND DEATHS FROM COVID 19, MODERATE ASTHMA PRESENTS A HIGHER RISK*

The COVID-19 has not only presented a challenge never before experienced in the United States but globally. As of the current update (June 17, 2020) from the Centers for Disease Control and Prevention (CDC), there have been 2,132,321 confirmed cases in the United States. In the United States we have surpassed 116,000 deaths (116,862).

Institutions housing inmates serving sentences present greater challenges to not only avoid an individual contracting the disease but surviving. This disease is truly a death sentence for many individuals. Those who have health conditions, are high risk, and/or are minorities (African American or Hispanic) face a unique and uphill battle with regard to contracting COVID-19 and living to talk about it.

There is a clear difference in both the numbers of minorities (African Americans and Hispanics) for infection and death after being infected. The Center for Disease and Control (CDC) has been concerned with these statistics. In fact, the CDC has stated in pertinent part as follows:

A recent CDC MMWR report included race and ethnicity data from 580 patients hospitalized with lab-confirmed COVID-19 found that 45% of individuals for whom race or ethnicity data was available were white, compared to 59% of individuals in the surrounding community. However, 33% of hospitalized patients were black, compared to 18% in the community, and 8% were Hispanic, compared to 14% in the community. These data suggest an overrepresentation of blacks among hospitalized patients. Among COVID-19 deaths for which race and ethnicity data were available, New York Citypdf iconexternal icon identified death rates among black/African American persons (92.3 deaths per 100,000 population) and Hispanic/Latino persons (74.3) that were substantially higher than that of white (45.2) or Asian (34.5) persons. Studies are underway to confirm these data and understand and potentially reduce the impact of COVID-19 on the health of racial and ethnic minorities.

FCI Elkton is one of the institutions with special requirements due to the spread of COVID-19. Congress enacted the Cares Act to allow for the release of inmates in federal facilities due to the COVID-19. From the very onset, FCI Elkton had severe and real issues with both infection and deaths. Attorney General Barr issued two (2) Memorandums with regard to the prioritization of home confinement as appropriate in response to the COVID-19 Pandemic. In his second Memorandum, he acknowledged the problem with specific institutions. More specifically, he stated in pertinent part:

> While BOP has taken extensive precautions to prevent COVID-19 from entering its facilities and infecting our inmates, those precautions, like any precautions, have not been perfectly successful at all institutions. I am therefore directing you to immediately review all inmates who have COVID-19 risk factors, as established by the CDC, starting with the inmates incarcerated at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated facilities where you determine that COVID-19 is materially affecting operations. You should begin implementing this directive immediately at the facilities I have specifically identified and any other facilities facing similarly serious problems. And now that I have exercised my authority under the CARES Act, your review should include all at-risk inmates—not only those who were previously eligible for transfer.
>
> For all inmates whom you deem suitable candidates for home confinement, you are directed to immediately process them for transfer and then immediately transfer them following a 14-day quarantine at an appropriate BOP facility, or, in appropriate cases subject to your case-by-case discretion, in the residence to which the inmate is being transferred. It is vital that we not inadvertently contribute to the spread of COVID-19 by transferring inmates from our facilities. Your assessment of these inmates should thus be guided by the factors in my March 26 Memorandum, understanding, though, that inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19 is materially affecting their operations.
>
> I also recognize that BOP has limited resources to monitor inmates on home confinement and that the U.S. Probation Office is unable to monitor large numbers of inmates in the community. I therefore authorize BOP to transfer inmates to home confinement even if electronic monitoring is not available, so long as BOP determines in every such instance that doing so is appropriate and consistent with our obligation to protect public safety.

>> (Memorandum for the Director of Bureau Of Prisons. From The Attorney General: Subject: <u>Increasing Use of Home Confinement at Institutions Most Affected by COVID-19.</u> April 3, 2020.)

Due to the health challenges at FCI Elkton there has been substantial litigation and Orders of release for a substantial number of inmates. The BOP has 566 federal inmates who tested positive and 342 staff (April 22 2020). Of the facilities, a few have been hard hit by the virus, like FCI Elkton (Ohio) - 52 inmates, 48 staff and 6 inmate deaths ( during only 4 weeks).

On April 13, 2020, inmates at Elkton Federal Correctional Institution, brought an emergency court action seeking release from Elkton due to the spread of COVID-19 within the prison (Reference United States District Court Northern District of Ohio, Craig Wilson, et v Mark Williams, et al, Case: 4:20-cv-00794). The action sought the release of some inmates from prison to Home Confinement or by Furlough, particularly those who were old or had underlying conditions consistent with the guidelines provided by the CDC. Noted in the lawsuit was the "dorm-style" design of most minimum and low prisons where inmates live in close proximity to one another.

Ironically, the government attaches the Affidavit of Sarah A. Dees from that very lawsuit to the United States' Response Opposing Defendant's Motion for Compassionate Release (ECF 205-1), in Matthews case and for the Courts consideration in the instant matter. Sarah A. Dees offers no information with regard to Matthews in her Affidavit and likely never met him and has no clue of his medical, personal or health issues. Clearly, based upon Judge Gwin's ruling, her affidavit was less then persuasive. It should likewise, not be persuasive in Matthews case for the purpose of compassionate release.

*Moderate To Severe Asthma Is A Serious Risk Factor*

Asthma (moderate to severe) is a serious risk factor according to the CDC. www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher risk.html#asthma. In fact, the CDC provides the following, in part:

6

> Actions you can take based on your conditions and other risk factors
>
> **Conditions and Other Risk Factors**
>
> - Asthma
>
> **Asthma (moderate-to-severe)**
>
> Moderate-to-severe asthma may put people at higher risk for severe illness from COVID-19.
>
> **Actions to take**
>
> - Follow your Asthma Action Plan.
> - Keep your asthma under control.
> - Continue your current medications, including any inhalers with steroids in them ("steroids" is another word for corticosteroids).
> - Know how to use your inhaler.
> - Avoid your asthma triggers.
> - If possible, have another member of your household who doesn't have asthma clean and disinfect your house for you. When they use cleaning and disinfecting products, have them:
>   - Make sure that people with asthma are not in the room.
>   - Minimize use of disinfectants that can cause an asthma attack.
>   - Open windows or doors and use a fan that blows air outdoors.
>   - Always follow the instructions on the product label.
>   - Spray or pour spray products onto a cleaning cloth or paper towel instead of spraying the product directly onto the cleaning surface (if the product label allows).
>
> **Why you might be at higher risk**
>
> COVID-19 can affect your respiratory tract (nose, throat, lungs), cause an asthma attack, and possibly lead to pneumonia and serious illness.

## II. *The Court Should Grant Matthews' Motion For Compassionate Release*

## A. The Court Has Authority To Grant Release Because Matthews Exhausted His Administrative Remedies

The government, in its opposition, correctly states that an inmate must by statute exhaust his/her administrative remedies. 18 U.S.C. 3582 (c) (1) (A). A district court may not grant a defendant's motion for compassionate release unless the defendant files it after "fully exhausting the earlier of (1) the defendant "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) "the lapse of 30 days from the receipt of such a request the warden of the defendant's facility." 18 U.S.C. 3582 (c) (1) (A).

The government argues in the United States' Response Opposing the Defendant's motion For Compassionate Release that this Court lacks jurisdiction because Matthews has not exhausted his administrative remedies. More specifically, it states as follows:

> *Matthews did not exhaust his administrative remedies. He has not made a request to the Bureau of Prisons asking that he be granted compassionate release based on his asthma and Covid-19. Matthews has therefore not satisfied § 3582(c)(1)(A)'s mandatory exhaustion requirement.* (ECF No. 205, page 20, lines 3 -7).

The government does not indicate its source of information to support this position. Earlier in the filing, the government indicates:

> *Matthews also claims that he submitted a request for compassionate release that was denied. But records from the Bureau of Prisons do not show this request or denial.* (ECF No. 205, page 6, lines 6-8).

It is factually incorrect. Defendant Matthews has exhausted his administrative remedies. **Furthermore, the evidence directly refutes the statements of the government in its fillings and the statements of the Bureau of Prisons in its pleadings.**

In fact, a request was made to the following:

1. Warden Mark Williams           Signed for on 4/13/2020
2. Mr. Cohn (Case Manager)        Signed for on 4/13/2020
3. Federal Bureau of Prisons      Signed for on 4/13/2020
4. BOP Designations &             Signed for by Mail Clerk
   Sentence Computations Center (Grand Prairie, Texas)

The *"Compassionate Release Requests"* sent to the above persons was a formal request (Exhibit No. 1, attached). The Compassionate Release Request included the virus being spread within FCI Elkton and that Matthews suffers from health issues, including asthma. At the time of the writing, 9 inmates at that facility lost their lives due to the virus.

On April 28, 2020 despite the claims of the government and apparently the Bureau of Prisons, Warden Mark K. Williams denied the formal request for the Compassionate Release of Defendant/Inmate Matthews, which was signed for on April 13, 2020 (Exhibit No. 2, attached). Cleary, without dispute Matthews satisfies all statutory requirements! Why the Bureau of Prisons would provide misleading and misinformation for the U.S. Attorney's Office to mislead this Court is unknown but certainly doesn't serve justice.

Warden Williams in his denial letter indicates that Matthews has a "Low Risk Recidivism level and has a history of violence…." Once again, a false

assertion that lacks support. A review of Matthews' Presentence Report does not support this misstatement. Matthews has no incidents of violence or conviction for any violent activity in his past.

While Counsel herein is concerned with his client, it raises questions overall of the government's responses and the Bureau of Prisons integrity on this issue. They have and maintain all inmates' files. This is a serious matter and individuals' lives (inmates or not) are at stake. The callous method of just acting as if they are "just criminals and no one cares" must be refuted. The inmates/defendants are people with families and have made bad decisions and/or mistakes.

Inmates such as Terrance Matthews, who have served an extremely substantial portion of their sentence, deserve more from the government. In fact, the people of the United States deserve more honesty, better record keeping and a sincere assessment. This virus is real - the FCI Elkton has been designated for special treatment due to its high rate of infection and deaths.

The government in the United States' Notice of Supplemental Authority cites the Sixth Circuit decision, *United States v. Alam,* ___ F.3d ___, 2020 WL 2845694 to support its opposition. *Alam* does not support its position as it relates to Defendant Matthews. In *Alam,* the Court held that the requirement of exhausting administrative remedies is mandatory. Administrative remedies are a prerequisite to the filing of a Motion for Compassionate release. In *Alam,* the Defendant sent a request to the Warden for compassionate release but filed his Motion with the Court, without getting a response from the Warden or waiting 30 days as required by the statute. *Alam* is factually distinct from Defendant Matthews. Matthews exhausted his administrative remedies by filing the above request with multiple individuals. He filed with the Warden, his Case Manager, the Bureau of Prisons

and with the Bureau of Prisons Designation and Computation Center. Matthews was denied by the Warden. Matthews even filed his Pro Se Motion for Compassionate Release more than 30 days after. *Alam does not support the government's position. In fact, the decision in Alam makes clear that Matthews' Motion is properly before this Court.*

### B. There Are Extraordinary Circumstances and Compelling Reasons To Grant Matthews Compassionate Release.

Compassionate release for Matthews would be consistent with all applicable policy statements issued by the sentencing commission. Section 1B1.13 specifies four (4) categories for consideration of "extraordinary and compelling reasons". The categories are (1) the inmate's medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and (4) other reasons "[a]s determined by the Director of the Bureau of Prisons.

Terrance Matthews is an African American, 46-year old inmate at FCI Elkton. Matthews completed thirty-six (36) classes and programs during his years of confinement (Exhibit No. 3, attached). The programs include applied reentry, residential reentry, United States Probation, parenting, beginning algebra, accounting and resume development. Matthews has served approximately eight years of incarceration on a ten-year sentence. He was on home confinement for a year and seven months with electronic monitoring. He is a different person from the 35-year old who was involved in illegal activity (Exhibit No. 4, attached). He has missed many days with his family and special occasions.

*Matthews' release date is March 11, 2021! He is approximately only nine (9) months from his release date (Exhibit No. 5, attached).* The government alleges

another incorrect fact in its pleadings apparently relying on someone at the BOP that spreads misinformation and inaccurate information to oppose an inmate's compassionate release. The government in the United States' Response Opposing the Defendant's Motion for Compassionate Release, represents inaccurately that Matthews' projected release date is June 19, 2022 (ECF No. 205, page 5, line 17). Matthews has met with his Case Manager and has been provided paperwork which clearly indicates a March 11, 2021 date. The Bureau of Prisons web site and inmate search verifies Matthews' release date of March 11, 2021 (Exhibit No. 5, attached).

According to the CDC, those at high-risk for severe illness from COVID-19 include those people of all ages with underlying medical conditions, particularly if not well controlled, including, amongst other conditions, "people with chronic lung disease or moderate to severe asthma". For such immunocompromised persons, the best way to prevent COVID-19 is to avoid being exposed to the virus.

Such at-risk for severe illness or death persons should: (1) Wash their hands often with soap and water for at least 20 seconds especially after they have been in a public place or after blowing their noses, coughing, or sneezing. If soap and water are not readily available, they should use a hand sanitizer that contains at least 60% alcohol. (2) Avoid leaving home as much as possible and practice social distancing. Maintain a distance of at least 6 feet between them and people outside of their household. (3) Cover their mouths and noses with a cloth a face covering when around others to protect other people in case they are infected, and ensure that others around them do the same. (4) Clean and disinfect frequently touched surfaces. This includes tables, doorknobs, fixtures, etc.

It is undisputed that Matthews has Asthma. In fact, it is undisputed that he has had the condition as a child and as an adult. It is undisputed that he has been hospitalized on multiple occasions due to Asthma, prior to being incarcerated. His Presentence Report (also undisputed) states in pertinent part, many years ago:

> 70. The defendant advised he has asthma and uses an inhaler when needed. MATTHEWS reported he has been hospitalized on numerous occasions for his asthma, the most recent being in approximately 2006. With the aforementioned exceptions the defendant reported

(Matthews Presentence Report, Page 17, Paragraph 70.

Prepared on 01/03/2013).

In order to protect their health the immunocompromised are advised by the CDC to continue regular treatment with their medications or treatments, continuously discuss any concerns about their treatment with their doctors, keep regularly scheduled appointments with their doctors and ensure that they have an emergency supply of prescription medications (at least 30 days of doses).

According to the relevant CDC guidelines, Terrence Matthews is at high-risk for severe illness from COVID-19. Although the Government understates the severity of his asthma condition based on a small portion (only two pages) of the medical files and records on file with this Honorable Court, Matthews actually has moderate to severe asthma.

It would be impossible for the Federal Bureau of Prisons and for Matthews to meet even the bare minimum requirements for keeping him safe from severe illness. The facilities in the institution in which he is incarcerated do not allow for frequent hand soap and water washing and/or frequent hand sanitizer application. It is beyond argument that he and/or the other inmates can practice social distancing, as warehousing inmates into as small spaces as possible is the hallmark

of prison sentencing and directly antithetical to social distancing practicing. Similarly, it would be difficult, if not impossible for the facility and inmates to use fresh cloth to cover their mouths and noses when inmates around others, since they are around each other and other third parties (guards, staff, etc.) virtually around the clock. It is a certainty that inmates do not have the opportunity, materials, supplies and/or ability to clean and disinfect the frequently touched surfaces that are shared with all of the other inmates.

Moreover, the Government's assertion that Matthews' asthma condition is well-controlled is incorrect. The two pages of Matthews' medical records upon which the Government relies are old, dating as far back as 2013. It is important to note that the 2013 date is relevant, as it also reflects the last time that Matthews received treatment or medications for his asthma, despite his constant requests for such – a period of at least three years. The second exhibit offered by the government dates back to 2017.

Instead, Matthews was advised that he could not receive medication, due to "budget cuts". If Matthews' asthma was ever "well-controlled" it certainly is not well-controlled now – three untreated, unmedicated years later and post COVID-19! If the Bureau of Prisons was not able to provide a minimal level of medical treatment to Matthews in a pre-Covid-19 environment, it would be impossible for it to provide adequate minimum care for Matthews in the heightened emergency situation that is presented by the existence of the virus in the prison system and surrounding society.

## CONCLUSION

Matthews' Motion for Compassionate Release was properly filed because he exhausted his administrative remedies. Justice and fairness along with the COVID-19 pandemic implications in FCI Elkton are a part of the support for early release for Matthews who has only 9 months remaining on a ten-year (120 month) sentence.

                                              Respectfully Submitted,

                                              */s/ Stephon E. Johnson*
                                              STEPHON JOHNSON